UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BOB BAFFERT,                              )
     *Plaintiff*                          )
                                          )
v.                                        )
                                          )    Case No. 1:21-cv-3329 (CBA)
                                          )
THE NEW YORK RACING                       )
ASSOCIATION, INC.,                        )
     *Defendant*                          )

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO HOLD DEFENDANT IN CIVIL CONTEMPT AND TO
STAY NYRA'S RENEWED SUSPENSION PROCEEDINGS**

WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky 40507-1746
859.233.2012


September 22, 2021

STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
212.506.3900

BREWSTER & DEANGELIS
2617 E. 21st
Tulsa, Oklahoma 74114

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................ 1

ARGUMENT ...................................................................................................................... 6

    I. The Court Should Hold NYRA in Civil Contempt. ..............................................6

        A.    The Court's Order is clear and unambiguous...........................................7

        B.    NYRA's recent actions are clear and convincing evidence of noncompliance with the Court's Order............................................................................ 9

        C.    NYRA's actions are not an attempt to comply in a reasonable manner. ........... 10

    II. NYRA's Renewed Efforts to Suspend Baffert Fail to Meet the Requirements of Due Process. ...................................................................................................................11

    III. The Court Should Sanction NYRA to Coerce Compliance. .........................................15

    IV. The Court Should Award Attorneys' Fees and Costs. ..................................................16

CONCLUSION..................................................................................................................... 17

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Al Hirschfield Found. v. Margo Feiden Galleries Ltd.*,
  438 F.Supp.3d 203 (S.D.N.Y. 2020) ..................................................................................7,16

*Alvarez v. Hayward,*
  2006 WL 2023002 (N.D.N.Y. July 18, 2006) ........................................................................8

*Bear U.S.A. v. Kim*,
  71 F.Supp.2d 273, (S.D.N.Y. 1999) ...................................................................................16

*BeautyBank, Inc. v. Harvey Prince LLP*,
  811 F.Supp.2d 949 (S.D.N.Y. 2011) ....................................................................................9

*Bouie v. City of Columbia,*
  378 U.S. 347 (1964) ...........................................................................................................11

*CBS Broadcasting, Inc. v. FilmOn.com, Inc.*,
  814 F.3d 91 (2d Cir. 2016) ................................................................................................15

*Chao v. Gotham Registry, Inc.*,
  514 F.3d 280 (2d Cir. 2008) .............................................................................................7,8

*Chere Amie Inc.*,
  175 F.Supp.2d at 567 ........................................................................................................16

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012) ...........................................................................................................11

*Dole Fresh Fruit Co. v. United Banana Co.*,
  821 F.2d 106 (2d Cir. 1987) ..............................................................................................15

*EEOC v. Local 638*,
  753 F.2d 1172 (2d Cir. 1985) ...........................................................................................15

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ...........................................................................................................11

*Galvin v. New York Racing Association*,
  70 F.Supp.2d 163 (E.D.N.Y. 1998) ....................................................................................8

*Great Lakes Educ. Loan Servs., Inc. v. Leary*,
  629 B.R. 360 (Bkrcy. S.D.N.Y. 2021) ..............................................................................15

*Int'l Union v. Bagwell,*
    512 U.S. 821, (1994)...................................................................................6

*International Union, United Mine Workers of Am. v. Bagwell,*
    512 U.S. 821 (1994)..................................................................................15

*John B. Stetson Co. v. Stephen L. Stetson Co.,*
    128 F.2d 981 (2d Cir. 1942)......................................................................9

*John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.,*
    154 F.Supp.2d 5279 (S.D.N.Y. 2001).....................................................14

*King v. Allied Vision, Ltd.,*
    65 F.3d 1051 (2d Cir. 1995).......................................................................7

*Mathews v. Eldridge,*
    424 U.S. 319 (1976..................................................................................14

*Medina v. Buther,*
    2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019)...............................10

*National Nutritional Foods Ass'n v. Novitch,*
    589 F.Supp. 798 (S.D.N.Y. 1984)..............................................................9

*Pacific Mut. Life Ins. Co. v. Haslip,*
    499 U.S. 1 (1991)....................................................................................13

*Papachristou v. Jacksonville,*
    405 U.S. 156 (1972)................................................................................11

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,*
    369 F.3d 645 (2d Cir. 2004)..................................................................6,15

*Powell v. Ward,*
    487 F.Supp.917 (S.D.N.Y. 1980)............................................................10

*State Farm Mut. Ins. Co. v. Campbell,*
    538 U.S. 408............................................................................................13

*United States v. Lanier,*
    520 U.S. 259 (1997)................................................................................11

*United States v. Williams,*
    553 U.S. 285 (2008)................................................................................11

*Yurman Design  Inc. v. Chaindom Enters., Inc.*,
    2003 WL 220478843, at *2-3 (S.D.N.Y. Aug. 29, 2003)......................................................16

**<u>Statutes</u>**
42 U.S.C. § 1983......................................................................................................................2
18 U.S.C. § 401(3)...................................................................................................................6

**<u>Regulations</u>**
9 NYCRR 4000-4046 ...............................................................................................................3

Comes the Plaintiff, Bob Baffert ("Baffert"), by counsel, and for his Memorandum of Law in support of his Motion to hold the Defendant, The New York Racing Association, Inc. ("NYRA"), in civil contempt for its violation of the Court's temporary injunction entered in this case on July 14, 2021 (*See* ECF 26) and to stay NYRA's renewed attempt to suspend him, hereby states as follows:

## INTRODUCTION

On July 14, 2021, this Court entered an Order enjoining NYRA from enforcing a suspension it had issued against Baffert whereby NYRA prohibited Baffert from entering or stabling horses at all racetracks it operates. The Court directed that NYRA was enjoined from enforcing its suspension "pending the final hearing and determination of this action." (*Id.*). Despite this fact, in direct contravention of this Court's Order, NYRA has instituted renewed proceedings to impose the exact same suspension which was enjoined. NYRA attempts to circumvent the Court's Order by claiming that its latest effort to suspend Baffert is "new." There is nothing new about it. NYRA is seeking to impose the exact same suspension—for the exact same reasons—actions that clearly are enjoined pending the final resolution of this case. Until this litigation is concluded, NYRA cannot move forward with attempting to enforce a suspension against Baffert that is identical to the one that has been enjoined. For the reasons that follow, NYRA should be found in contempt of this Court's injunction Order and NYRA's renewed effort to suspend Baffert should be stayed.

## FACTS

Baffert is one of the most recognized and accomplished thoroughbred trainers in the history of horse racing, with an unprecedented career spanning over 46 years. (ECF 1 at ¶ 7). He is the trainer of MEDINA SPIRIT, who won the Kentucky Derby on May 2, 2021 at Churchill Downs

in Louisville, Kentucky. (*Id.*). On May 8, 2021 Baffert was informed by the Kentucky Horse Racing Commission ("KHRC") that the post-Derby primary blood sample taken from MEDINA SPIRIT allegedly detected trace amounts (21 picograms)[1] of betamethasone—a lawful, commonly used therapeutic medication. (*Id.* at ¶ 24). On May 17, 2021, prior to the initiation of any of the administrative process in Kentucky, NYRA took the unprecedented step of announcing that it was immediately and indefinitely suspending Baffert from entering horses in racetracks that NYRA operates, including Belmont Park, Saratoga Race Course, and Aqueduct Racetrack. (*Id.* at ¶ 33; See May 17, 2021 letter attached hereto as **Exhibit A**). These tracks encompass *all* premier thoroughbred racetracks in New York. (*Id.* at ¶ 13). NYRA's actions were taken despite the fact that Baffert maintains a valid and unencumbered license issued to him by the New York State Gaming Commission ("Gaming Commission") that gives him the right to participate in thoroughbred racing in New York, and also in spite of the fact that Baffert has not now, nor has he ever been, accused of any misconduct or violation of any New York racing rules for over the past 30 years. (*Id.* at ¶¶ 1, 50).

In its May 17, 2021 letter, NYRA offered three reasons for Baffert's suspension: (1) a decision made by Churchill Downs to suspend Baffert; (2) four alleged historical testing violations of Baffert trained horses in 2020 and 2021; and (3) Baffert's statements following the 2021 Kentucky Derby. (*Id.* at 5 (citing ECF 3-6 at 1-2)).

On June 14, 2021, Baffert brought this action pursuant to 42 U.S.C. § 1983 and New York State law. Specifically, Baffert alleged that: (1) NYRA did not have the authority to suspend his trainer's license granted by the Gaming Commission; (2) NYRA deprived Baffert of his right to

---

[1] A picogram is a trillionth of a gram. (See affidavit of Dr. Steven Barker attached to Baffert's Motion for Preliminary Injunction, ¶ 7). This is the equivalent of one drop of water in an Olympic-sized pool. (*Id.*). Such a small amount would have zero pharmacological effect on a thousand pound horse. (*Id.*).

due process guaranteed by the Fourteenth Amendment; and (3) NYRA intentionally interfered with his contractual relationships with his clients. (*See generally id.*). The same day, Baffert filed a Motion for a Temporary Injunction (the "Motion"), seeking a preliminary injunction to enjoin NYRA from enforcing its suspension pending the resolution of Baffert's claims in his Complaint. (ECF 3). On July 14, 2021, the Court entered an Order granting Baffert's Motion. (ECF 26). Importantly, the Court stated as follows:

> For these reasons, the motion for a preliminary injunction is GRANTED. The Defendant, The New York Racing Association, Inc. ("NYRA"), its officers, directors, employees, agents, and affiliates, and all other persons who receive actual notice of this Order by personal service or otherwise and who are acting in concert or participation with NYRA and/or its officers, directors, employees, agents, and affiliates, are e*njoined, pending the final hearing and determination of this action, from enforcing the suspension of Baffert which NYRA issued by letter dated May 17, 2021.*

(*Id*. at 27-28 (emphasis added)). In other words, the Court clearly and unequivocally enjoined NYRA from enforcing its suspension of Baffert until this case is concluded.

In the immediate aftermath of the Court's Order, NYRA remained idle, did not appeal the Court's ruling (despite having the right to do so), and instead filed a Motion to Dismiss some of the counts of Baffert's Complaint. And since the injunction, Baffert raced thoroughbreds at Saratoga Race Course multiple times—and even won the prestigious Grade I Ballerina Stakes—without incident. To date, the Gaming Commission—the agency specifically tasked with regulating racing and the licensing of thoroughbred trainers—has not taken any action against Baffert and there is no indication that it plans to do so. The Gaming Commission's refusal to take any action against Baffert speaks volumes because it is the entity charged with licensing trainers, investigating allegations of medication violations, and meting out punishment if the rules of racing are violated. (*Id.* at 26, citing 9 NYCRR 4000-4046).

Behind the scenes, however, NYRA was apparently plotting and planning to try to circumvent the Court's ruling. On September 10, 2021, Baffert was presented with another letter from NYRA informing him that NYRA intended to suspend him for the exact same reasons previously set forth in the May 17, 2021 letter. (*See* September 10, 2021 Letter, attached hereto as **Exhibit B**). NYRA's stated reasons behind its renewed effort to punish Baffert are identical to those which the Court has already analyzed and found to be constitutionally problematic: (1) Baffert's four alleged drug-testing violations in 2020 and 2021; (2) Baffert's public statements following the Kentucky Derby; and (3) Churchill Downs' suspension. (*See generally id.*). The only thing different is that it appears that NYRA has concocted some procedures—apparently just for this case—in an attempt to retroactively install legitimacy to its blatantly unlawful actions. (*See* NYRA Hearing Rules and Procedures, attached hereto as **Exhibit C**). These procedures provide that NYRA will appoint its own hearing officer who will have virtually limitless discretion. (*Id*. at § 14(b)). Thereafter, the hearing officer will make findings and recommendations, but a "Panel," consisting entirely of members appointed by NYRA's President, can exercise its discretion to disregard any of the evidence presented at the hearing and impose its own ruling. (*Id*. at §16 (b)). And for the final nail in the coffin, the procedures state that the Panel's decision cannot be appealed. (*Id*. at § 14(f)).

Accompanying its September 10, 2021 letter, NYRA also provided Baffert with a formal "Statement of Charges," comprised of three amorphous and vague accusations. The official "charges" against Baffert are that he has engaged in: (1) Conduct Detrimental to the Best Interests of Racing; (2) Conduct Detrimental to the Health and Safety of Horses and Jockeys; and (3) Conduct Detrimental to NYRA's Business Operations. (*See* Statement of Charges, attached hereto as **Exhibit D**). These charges are not defined, are not codified in any written rules, and contain no

discernable standards to identify a violation other than the hearing officer's (or the Panel's) subjective belief. They simply did not exist until NYRA created them out of whole cloth two months after the Court refused to allow it to arbitrarily suspend Baffert, and at least *four months* after the conduct in question occurred.

Likewise, none of these charges—which again are entirely premised upon matters in other jurisdictions—provide any indication as to what form of punishment Baffert could potentially face. NYRA's recently created "Hearing Rules and Procedures" state that any charges must contain the "proposed penalty being sought," but nowhere is that information provided to Baffert. The only indication of any particular punishment NYRA might consider imposing is contained in a subsequent September 13, 2021 letter to the undersigned whereby NYRA reveals its predetermined *fait accompli* by stating that it intends to "bar Mr. Baffert from entering and stabling horses at the racetracks." (*See* September 13, 2021 Letter, attached hereto as **Exhibit E**). However, again, there is no indication of how long NYRA seeks to "bar" Baffert. Presumably, since no discussion of a time frame can be found, NYRA has decided it intends to punish Baffert in the exact same manner and for the exact same duration as it previously tried—indefinitely. This Court has already pointed out the legal infirmities of an "indefinite" suspension. (ECF 26 at 25).

The injunction Order entered by this Court was clear: NYRA is enjoined from suspending Baffert for the reasons set forth in NYRA's May 17, 2021 letter until the conclusion of this case. (*Id*. at 27-28). The only difference between the enjoined suspension and the new attempted suspension is the date on NYRA's letterhead. (Compare **Exhibits A and B**). NYRA's latest actions are premised on the exact same factual circumstances and stated justifications—which only showcases NYRA's bad faith in attempting to circumvent the Court's order and legitimize a predetermined outcome. NYRA's conduct is an attempt to put the toothpaste back into the tube—

which can't legally be done.  In fact, at oral argument on Baffert's injunction motion, counsel for NYRA suggested it might try to do this very thing by retroactively providing Baffert with a "full blown" hearing.  (*See* Transcript of Hearing, pp. 35-36, attached hereto as **Exhibit F**).  This Court rejected such a proposition by stating: "Isn't that a little too late?" (*Id.*).

Yes, it is too late.  This Court has already enjoined NYRA from engaging in the very conduct it seeks to replicate.  The Court should hold NYRA in civil contempt for attempting to circumvent its order and stay NYRA's renewed effort to suspend Baffert.

## ARGUMENT

### I.    The Court Should Hold NYRA in Civil Contempt.

A party who disagrees with a district court order is expected to still obey the order until it is modified or reversed. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).  Federal courts have inherent authority to enforce compliance with their orders and to punish for contempt any person who violates its orders.  *See* 18 U.S.C. § 401(3); *Int'l Union v. Bagwell*, 512 U.S. 821, 831-33 (1994).  Orders of civil contempt serve a dual purpose of securing compliance with court orders, and compensating a party who has been injured by such noncompliance. *Paramedics,* 369 F.3d at 657.  Federal courts have broad discretion to institute a remedy that will ensure a defendant's future compliance with a court order. *Id.* at 657.

Under Second Circuit law, when a party fails to comply with a court order, it may be held in contempt if: (1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *Paramedics,* 369 F.3d at 655.  Civil contempt sanctions may serve either or both of two purposes: they "may be coercive to secure compliance

with orders, or they may be compensatory to make whole the party who has been wronged." *Al Hirschfield Found. v. Margo Feiden Galleries Ltd.*, 438 F.Supp.3d 203, 207 (S.D.N.Y. 2020).

In this case, NYRA's actions plainly circumvent the letter and spirit of the Court's order enjoining it from any further action pertaining to its May 17, 2021 suspension of Baffert until after the case concludes. NYRA's attempt to initiate renewed suspension proceedings—concerning the exact same events, with the exact same stated reasons for why it wishes to suspend Baffert—is an overt effort to evade this Court's rulings and the legal issues that are currently being litigated. The Court should put an end to NYRA's gamesmanship by holding it in civil contempt and awarding Baffert the full gamut of civil sanctions.

### A.    The Court's Order is clear and unambiguous.

An order is clear and unambiguous when it "leaves no uncertainty in the minds of those to whom it is addressed" and instead allows them "to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008) (the order must be sufficiently clear to allow the party to whom it is addressed to ascertain precisely what it can and cannot do). This analysis focuses on whether an order "unambiguously proscribes the challenged conduct," not whether it is clear in a more "general sense." *Id.*

This Court very clearly and unambiguously held that NYRA's suspension of Baffert was improper. Specifically, NYRA was enjoined from enforcing its suspension of Baffert until the conclusion of the pending litigation. (*See* ECF 26 at 27-28). The Court also made it clear to NYRA in oral argument that it was "too late" to try to give Baffert an after-the-fact hearing to fix its errors. (**Exhibit E**). This is consistent with the ruling of other courts, addressing similar claims against NYRA, and holding that NYRA must honor the injunctive remedy until the case is

concluded. See *Galvin v. New York Racing Association*, 70 F.Supp.2d 163, 179 (E.D.N.Y. 1998) (NYRA ordered to reinstate credentials of veterinarian "pending conclusion of this case"); *Alvarez v. Hayward,* 2006 WL 2023002 (N.D.N.Y. July 18, 2006) ("NYRA is enjoined, pending the resolution of this action, from barring Plaintiff from working at Saratoga Race Course"). NYRA cannot turn around and attempt to reissue the same suspension based on the same factual allegations—as it has explicitly stated it aims to do—when this Court has enjoined that very conduct. The Court's opinion "unambiguously proscribes the challenged conduct," *Chao*, 514 F.3d at 292, and NYRA's actions violate its clear and direct terms. *At a bare minimum*, NYRA's actions run contrary to the spirit and intent of the Court's Order.

There is nothing new which has transpired since NYRA was enjoined. No new facts, no new allegations. If anything, the facts have moved more solidly in Baffert's favor and toward maintaining the status quo as Baffert raced several horses at the recent Saratoga meet without incident.

Lastly, it should be noted that Baffert has challenged whether NYRA has the legal authority to suspend him. (*See* ECF 1). Baffert has contended that any suspension by NYRA is "tantamount" to a suspension of his trainer's license issued by the Gaming Commission and that NYRA cannot usurp the authority of the Gaming Commission. That issue is squarely before the Court and has yet to be finally decided. This is another reason why NYRA cannot plow forward like a bull in a China shop ignoring not only the Court's Orders, but also the important legal issues that have yet to be decided by this tribunal.

There was nothing ambiguous about the Court's ruling when it stated that NYRA was enjoined "pending the final hearing and determination of this action." It's latest conduct, which is simply a regurgitation of its previous conduct, should be found in contempt and stayed.

**B.    NYRA's recent actions are clear and convincing evidence of noncompliance with the Court's Order.**

For civil contempt, the clear and convincing evidence standard requires "proof adequate to demonstrate to a reasonable certainty that a violation occurred." *BeautyBank, Inc. v. Harvey Prince LLP*, 811 F.Supp.2d 949, 956 (S.D.N.Y. 2011).  It has also long been a rule of this Circuit that, in deciding whether an injunction has been violated, "it is proper to observe the objects for which the relief was granted and to find a breach of the decree in violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942).

NYRA's letter to Baffert, notice of charges, and newly drafted rules are all clear and convincing evidence of noncompliance with the Court's Order.  Because the Court's Order specifically referenced NYRA's May 17, 2021 letter, NYRA apparently thinks that it can simply re-date its letter and circumvent the Court's Order.  This is not the case.  As the Southern District of New York held in *National Nutritional Foods Ass'n v. Novitch*, 589 F.Supp. 798 (S.D.N.Y. 1984), "Promulgation by an administrative agency, without the receipt of new evidence of an order which can be equated to one enforcement of which has been enjoined violates the injunction entered against the first order.  As such, enforcement of the later promulgated order may be enjoined without reconsideration of the merits of the injunction."  *Id.* at 800 (internal citation omitted).  NYRA's conduct is simply a repackaged version of the same action already enjoined. The basis for NYRA's latest action rests on the *exact same* grounds presented in its May 17, 2021 letter: Baffert's racing record, Baffert's public statements following the Kentucky Derby, and Churchill Downs' decision to suspend him. *Compare* Exh. A *with* Exh. B.  The prior suspension was enjoined and any attempt to renew it is a clear violation of this Court's Order.

**C.      NYRA's actions are not an attempt to comply in a reasonable manner.**

The last inquiry is whether the "defendants have been reasonably diligent and energetic in attempting to accomplish what was ordered." *Powell v. Ward*, 487 F.Supp.917, 933 (S.D.N.Y. 1980), *aff'd and modified*, 643 F.2d 924 (2d Cir. 1981); *see also Medina v. Buther*, 2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019). A defendant is not "reasonably diligent" when it ignores an order or takes only "superficial actions" that strain the language and intent of the order. *Powell*, 487 F.Supp. at 933-34.

Here, NYRA's actions cannot be seen as anything other than an attempt to circumvent the Court's prior Order. Rather than accepting the Court's Order and allowing the remainder of this case to play out, NYRA is instead hell-bent on barring Baffert from racing in New York indefinitely, and is deploying truly Kafkaesque tactics to obtain its ultimate end. Not unlike Kafka's protagonist, Baffert finds himself accused by an unaccountable bureaucracy of unspecified charges for which he faces unspecific penalties, for an unspecified period of time, without any possibility of appeal. *See, e.g.,* Franz Kafka, THE TRIAL (1926). Similarly here, to ensure NYRA obtains its predetermined result, it crafted procedures specific to Baffert, to assess charges that were previously enjoined, while maintaining absolute control over the outcome of the proceedings. NYRA further states that Baffert will not have any right to appeal the decision entered by NYRA's hand chosen hearing officer or its appointed "Panel."

Under no circumstances can NYRA's actions be seen as an attempt to comply with the Court's injunction Order. To the contrary, every action NYRA has taken has been in defiance of the Court's Order. Baffert has demonstrated all three prongs of Civil Contempt and is entitled to an Order from this Court holding NYRA responsible for its unlawful conduct.

## II. NYRA's Renewed Efforts to Suspend Baffert Fail to Meet the Requirements of Due Process.

As set forth above, NYRA's conduct is in clear violation of this Court's Injunction Order. The Court does not need to engage in any further analysis. However, even if NYRA could somehow get around the Court's previous Order, it is clear that the new "Hearing Rules and Procedures" and "Statement of Charges" which it provided to Baffert once again fail to comply with due process.

The procedures which NYRA has concocted for Baffert were all created after the fact. None of the "rules" which NYRA now seeks to enforce were in place at the time that Baffert engaged in the conduct which NYRA contends is improper. Fair warning is a hallmark of due process. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also United States v. Lanier*, 520 U.S. 259, 265-66 (1997) ("no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed") (quoting *Bouie v. City of Columbia*, 378 U.S. 347 (1964)).[2] Supreme Court precedent is clear that "[l]iving under a rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the State commands or forbids." *Id.* (quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972)). Thus, a punishment fails to comply with due process "if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminant enforcement.'" *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

---

[2] While this analysis is often directed at criminal adjudications, the Supreme Court has made clear that fair-notice principles extend equally to administrative civil penalties. *See, e.g., FCC*, 567 U.S. 239; *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012).

NYRA is a state actor. (ECF 26 at 17). Baffert has a right to know—ahead of time—what conduct may cause him to face penalties from NYRA, particularly with respect to conduct *unrelated to New York racing rules and regulations* occurring *in other jurisdictions,* and particularly when NYRA's threatened punishment is exponentially more severe than any punishment he could receive from any other regulatory body.[3] First, NYRA cannot create rules after the fact and apply them to Baffert. Second, based on NYRA's notice, the "charges" against Baffert are unquestionably vague, entirely subjective and non-falsifiable. There are no articulable standards for establishing whether Baffert's conduct in other jurisdictions are "detrimental to the best interests of racing," "detrimental to the health and safety of horses and jockeys," or "detrimental to NYRA business operations" other than NYRA's one-sided belief that they are. Under this framework, there is no way Baffert could possibly know how to behave so as to evade the scope of NYRA's apparently limitless ability to ignore res judicata in other jurisdictions and impose its own arbitrary punishment.

NYRA's conduct has made it clear that it intends to use these loose standards to discriminately target those it does not like. Just last week, NYRA filed an *amicus* brief in the litigation between the Gaming Commission and trainer Linda Rice, urging the Schenectady County Supreme Court to uphold the Gaming Commission's three-year suspension of Rice. *See* T.D. Thornton, *NYRA Sides with Commission, Seeks Upholding of Rice Penalties*, Thoroughbred Daily News (Sept. 9, 2021). NYRA specifically asked the State court to consider the "intense public interest in protecting the integrity of Thoroughbred racing and the public's continued

---

[3] As set forth in the Complaint, the maximum penalty Baffert faces in Kentucky related to MEDINA SPIRIT – if a violation is found – is a 30 day suspension. (Complaint, ¶ 36). NYRA has *already* (unlawfully) suspended Baffert for 58 days for these same events—including barring Baffert from the Belmont Stakes. NYRA previously suspended Baffert on May 19, 2021. That suspension was set aside by this Court on July 14, 2021. Thus, for 58 days, Baffert was in fact suspended by NYRA. For NYRA to seek an additional suspension time, above and beyond racing's regulatory rules, is particularly egregious.

confidence in its operations and legitimacy." *Id.* Rice has been accused of severe violations of New York's racing rules, for conduct *occurring in New York* and directly impacting NYRA races. Curiously though, and at the same time it is attempting to ban Baffert yet again, NYRA has taken no action against Rice and continues to allow her to race. In other words, NYRA is not attempting to act outside the regulatory framework with Rice by invoking its new "Hearing Rules and Procedures." In her case, NYRA appears content to let the regulatory process with the Gaming Commission play out despite its stated "need to protect NYRA's patrons and the wagering public from the significant risk [Rice] poses to the fairness and integrity of Thoroughbred racing in New York State." *Id.* NYRA's duplicitous actions make clear that it has simply chosen to target Baffert for disparate treatment.

Ultimately, "the point of due process—of the law in general—is to allow citizens to order their behavior." *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 59 (1991) (O'Connor, J., dissenting); *see also State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 417-18. There is no way Baffert could have ever foreseen that NYRA, and not the Gaming Commission, could indefinitely suspend him from all New York racing based on adjudicated matters and unsubstantiated *allegations* pending in another jurisdiction. Much more, NYRA crafted its substantive charges and (deficient) hearing procedures months after the events in question, and only *after* the Court ruled that it had already violated Baffert's constitutional rights. It is obvious that these procedures and charges are applicable only to Baffert and did not exist until *after* the conduct they purport to regulate occurred. In other words, NYRA is blatantly attempting to invoke *ex post facto* proceedings to govern conduct that Baffert could not have remotely foreseen would expose him to

penalties disproportionate to the *maximum* penalty he could receive from the Gaming Commission for a similar violation.[4]

Finally, and relatedly, NYRA fails to follow even its own procedures. Its newly created rules make clear that the notice of hearing is required to include the "proposed penalty being sought." (Exh. C at 2). Nothing in its 12-page letter and notice to Baffert makes any reference to the length of the suspension NYRA seeks to impose. The Court has already found this to be problematic. (*See* ECF 26 at 24-25 ("And although NYRA characterizes the suspension as 'temporary,' a better description of it would be 'indefinite'"). This is the exact same thing NYRA seeks to do again – impose an indefinite suspension.

All of these deficiencies in NYRA's newly implemented procedures indicate why due process is so important. NYRA seems to believe now that it can simply offer a sham hearing and get around the Court's ruling by creating rules after the fact. As this Court has stated, it is too late. Further, Baffert cannot reasonably expect a fair proceeding when NYRA controls the outcome of the hearing, refuses to tell him what punishment he may face, and gives him no right to appeal. Due process plainly requires "notice and an opportunity to be heard at a *meaningful time* and in a *meaningful manner*." *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F.Supp.2d 527, 549 (S.D.N.Y. 2001) (emphasis added) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-34 (1976)). None of those basic components have been met here, which is the entire reason Baffert brought this action against NYRA in the first place.

---

[4] The Gaming Commission has reciprocity with other racing jurisdictions. For all of the past matters in other jurisdictions about which NYRA complains, Baffert was not suspended. If Kentucky suspends Baffert because of MEDINA SPIRIT, that will be honored by the Gaming Commission in New York. This is another reason why NYRA is completely jumping the gun and acting out of bounds by taking matters into its own hands and usurping the Gaming Commission's authority.

**III.     The Court Should Sanction NYRA to Coerce Compliance.**

Civil contempt sanctions exist to both "coerce future compliance and to remedy past noncompliance." *EEOC v. Local 638*, 753 F.2d 1172, 1138 (2d Cir. 1985). In determining whether coercive sanctions are appropriate, courts consider: (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon it. *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987); *see also Paramedics*, 369 F.3d at 657-68. The Court has broad discretion to craft appropriate sanctions, which may include a combination of remedies.

A sanction "coerces a defendant when it 'forces the contemnor to conform his conduct to the court's order.'" *Great Lakes Educ. Loan Servs., Inc. v. Leary*, 629 B.R. 360, 371 (Bkrcy. S.D.N.Y. 2021) (quoting *CBS Broadcasting, Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016)). As part of this discretion, a court may order a contemnor to pay a daily fine until the contemnor complies with the order. *See International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("A per diem fine imposed for each day a contemnor fails to comply with an affirmative court order … exert[s] a constant coercive pressure" such that "once the [judicial] command is obeyed, the future, indefinite, daily fines are purged"). The Court may also use its discretion to fashion other remedies to coerce future compliance with its orders.

Here, Baffert requests that the Court admonish NYRA for its behavior, find NYRA in contempt, and immediately order it to:

- Cease and desist from all conduct concerning or relating in any way to any suspension of Baffert until after the conclusion of this case;

- Beginning at a date set by the Court, pay a fine of $5,000 for each day that NYRA does not comply with the Court's directives; and

- Reimburse Baffert for his reasonable attorneys' fees and costs as a result of this motion for contempt.

Baffert's requests are reasonable given that NYRA's violations were plainly taken in bad faith. The Court has already warned NYRA concerning its efforts to suspend Baffert indefinitely and without due process of law. Clearly, and despite the existing injunction, NYRA believes it may nonetheless disregard any traditional constitutional safeguards and proceed however it wants. This behavior is precisely what Baffert's injunction was intended to halt.

## IV.     The Court Should Award Attorneys' Fees and Costs.

In addition to issuing contempt sanctions, the Court should award attorneys' fees and costs to Baffert for time expended in enforcing the injunction, including attorneys' fees and costs associated with bringing this motion.

It is well-established that a court may award attorneys' fees and costs and part of a contempt order. *See Al Hirschfield Found. v. Margo Feiden Galleries Ltd.*, 438 F.Supp.3d 203, 210 (S.D.N.Y. 2020) (awarding attorney fees as part of contempt sanctions); *Yurman Design Inc. v. Chaindom Enters., Inc.*, 2003 WL 220478843, at *2-3 (S.D.N.Y. Aug. 29, 2003) (awarding compensatory fees for plaintiffs' investigation into defendant's failure to comply with injunction). Such an award is appropriate where "the contemnor had actual notice of the Court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Chere Amie Inc.*, 175 F.Supp.2d at 567 (quoting *Bear U.S.A. v. Kim*, 71 F.Supp.2d 273, 279 (S.D.N.Y. 1999).

Here, NYRA certainly had notice of the Court's injunction and the scope of its ruling enjoining any further action associated with its May 17, 2021 suspension until this case reached finality. Rather than comply with the Court's ruling, it repackaged the exact same allegations into another proceeding (which itself *still* fails to provide adequate due process to Baffert) for the sole

purpose of circumventing the Court's ruling. Thus, NYRA's actions make its violation willful and blatant. Awarding Baffert his fees in this case is more than appropriate.

## **CONCLUSION**

For the foregoing reasons, this Court should hold NYRA in contempt for attempting to circumvent the Court's order and award Baffert his fees and costs. Additionally, the Court should stay NYRA from proceeding with its renewed efforts to suspend Baffert for the previously enjoined charges pending the conclusion of this case.

Dated: September 22, 2021

Respectfully submitted,

Charles Michael
cmichael@steptoe.com
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

BY: */s/ W. CRAIG ROBERTSON, III*
W. Craig Robertson III
wrobertson@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky 40507-1746
859.233.2012

Clark O. Brewster
Brewster & DeAngelis
2617 E. 21st
Tulsa, Oklahoma 74114
cbrewster@brewsterlaw.com
*(Pro hac filed and pending)*

*Counsel for Plaintiff Bob Baffert*