UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOB BAFFERT,<br> *Plaintiff*<br><br>v.<br><br>THE NEW YORK RACING<br>ASSOCIATION, INC.,<br> *Defendant* | Case No. 1:21-cv-3329 (CBA) |

**REPLY BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION TO HOLD DEFENDANT IN CIVIL CONTEMPT AND TO
STAY RENEWED SUSPENSION PROCEEDINGS**

WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky 40507-1746
859.233.2012




October 1, 2021

STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
212.506.3900

BREWSTER & DEANGELIS
2617 E. 21st
Tulsa, Oklahoma 74114

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

ARGUMENT.................................................................................................................................. 1

    I.    NYRA Should Be Held in Civil Contempt for Violating the Injunction Order.............1

    II.    NYRA's New Rules, Procedures and Charges are Inconsistent with Due Process.......5

    III.   NYRA Should Be Sanctioned......................................................................................10

CONCLUSION.............................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc.*,
 2020 WL 1900502, (S.D.N.Y. April 17, 2020) ................................................................. 3

*Arias v. Aviles*,
 No. 15-CV-9249. 2016 WL 3906738, (S.D.N.Y. July 14, 2016) ..................................... 10

*BMW of N. Am. v. Gore*,
 517 U.S. 559 (1996) ........................................................................................................... 5

*CBS Broadcasting, Inc. v. FilmOn.com, Inc.*,
 814 F.3d 91 (2d Cir. 2016) .............................................................................................. 11

*Cheri Amie, Inc. v. Windstar Apparel, Corp.*,
 175 F.Supp.2d 562 (S.D.N.Y. 2001) ................................................................................ 11

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
 532 U.S. 424 (2001) ........................................................................................................... 5

*Drywall Tapers and Pointers of Greater New York v. Local 503 of the Operative Plasters' and Cement Masons' Int'l Ass'n*,
 2002 WL 31641597, (E.D.N.Y. Nov. 19, 2002) ................................................................ 4

*EEOC v. Local*
 *638* F.2d 1172 (2d Cir. 1985) .......................................................................................... 11

*FCC v. Fox Television Stations, Inc.*,
 567 U.S. 239 (2012) ........................................................................................................... 8

*Galvin v. New York Racing Ass'n*,
 70 F.Supp.2d 163 (E.D.N.Y. 1998) ............................................................................. 3, 10

*Great Lakes Educ. Loan Servs., Inc. v. Leary*,
 629 B.R. 360 (Bkrcy. S.D.N.Y. 2021) ............................................................................. 11

*Henry v. I.N.S.*,
 74 F.3d 1 (1st Cir. 1996) .................................................................................................. 10

*John B. Stetson Co. v. Stephen L. Stetson Co.*,
 128 F.2d 981 (2d Cir. 1942) .............................................................................................. 3

*Medina v. Buther*,
 2019 WL 581270, (S.D.N.Y. Feb. 13, 2019) ..................................................................... 3

*National Nutritional Foods Ass'n v. Novitch*,
 589 F.Supp. 798 (S.D.N.Y. 1984) ................................................................................. 2

*National Res. Bur. v. Kucker*,
 481 F.Supp. 612 (S.D.N.Y. 1979) ............................................................................. 3,4

*Titra California, Inc. v. Titra Film*,
 2001 WL 1382587, (S.D.N.Y. Nov. 6, 2001) ............................................................... 3

*United States v. Williams*,
 553 U.S. 285 (2008) ...................................................................................................... 8

Comes the Plaintiff, Bob Baffert ("Baffert"), by counsel, and for his Reply Memorandum in support of his Motion to hold the Defendant, The New York Racing Association, Inc. ("NYRA"), in civil contempt for its violation of the Court's Temporary Injunction Order (the "Injunction Order") entered in this case on July 14, 2021 (*See* ECF 26) and to stay NYRA's renewed attempt to suspend him, hereby states as follows:

**ARGUMENT**

**I.    NYRA Should Be Held in Civil Contempt for Violating the Injunction Order.**

In its Response, NYRA primarily argues that it should not be held in contempt because its September 10, 2021 reinstitution of suspension proceedings against Baffert is not "clearly and unambiguously" prohibited by the Court's Injunction Order. (ECF 37 at 3). Nothing could be further from the truth. The Injunction Order is clear, unambiguous, and directly prohibits NYRA from suspending Baffert. NYRA is simply inventing imagined ambiguities where they do not exist to excuse its own bad faith effort to circumvent the Injunction Order.

NYRA argues that its latest action is "separate from the enforcement of the suspension issued by the May 17 letter." (ECF 37 at 10). However, NYRA fails to explain how its recent effort to suspend is any different from its previous one. The underlying facts and events behind NYRA's latest suspension effort are exactly the same as those detailed in its May 17 letter – something which NYRA does not dispute. Similarly, NYRA's stated goal—to "exclude [Baffert] from entering or stabling horses on the grounds it operates"— is exactly the same punishment it previously tried to impose. In other words, its latest efforts involve the same suspension, for the same reasons, and with the same punishment, as was previously enjoined.

1

The Injunction Order could not have been more clear. In two separate places, the Court unambiguously enjoined NYRA from enforcing its suspension of Baffert until this case reached a conclusion:

> Baffert filed a Complaint on June 14, 2021, and that same day moved for an order to preliminarily enjoin NYRA from enforcing its suspension pending the resolution of this lawsuit. A hearing on the motion was held on July 12, 2021. For the reasons stated below, the motion is GRANTED.
>
> (ECF 26 at 1).
>
> The Defendant, The New York Racing Association, Inc. ("NYRA"), its officers, directors, employees, agents, and affiliates, and all other persons who receive actual notice of this Order by personal service or otherwise and who are acting in concert or participation with NYRA and/or its officers, directors, employees, agents, and affiliates, are enjoined, pending the final hearing and determination of this action, from enforcing the suspension of Baffert which NYRA issued by letter dated May 17, 2021.

(ECF 26 at 27-28).

The suspension was enjoined because, among other things, NYRA had *already* suspended Baffert for 58 days without any due process of law, both pre-and post-deprivation. Specifically concerning NYRA's refusal to extend Baffert a "prompt" post-deprivation hearing, the Court remarked—in July—that such a hearing "*should have already occurred.*" (*Id.* at 25). This further explains the Court's colloquy in oral argument that NYRA's proposed hearing sometime after "NYRA's regular August 11, 2021 board meeting" would be "too late." (ECF 35 at 6). The Court was plainly opining on NYRA's ability to hold a future hearing based on the same exact facts. Absent new evidence, state agencies cannot make minor alterations to actions already enjoined without violating the injunction. *See National Nutritional Foods Ass'n v. Novitch*, 589 F.Supp. 798 (S.D.N.Y. 1984). NYRA cannot repackage the same action already enjoined into a new proceeding to evade the Injunction Order.

Similarly, NYRA fails to explain how this case is any different from any of the other historical instances in which NYRA was expected to honor an injunctive remedy until the case was complete. Most notably, in *Galvin v. New York Racing Ass'n*, 70 F.Supp.2d 163, 179 (E.D.N.Y. 1998), NYRA was ordered to reinstate a veterinarian's credentials "pending conclusion of the case." NYRA tries to reconcile its current conduct with that in *Galvin* by claiming that "[b]ecause it was NYRA's position [in *Galvin*] that it had already afforded the veterinarian a proper hearing, it would make little sense for NYRA to hold another hearing after the injunction issued." (ECF 37 at 11). The only thing that makes "little sense" is NYRA's attempt to argue around its duplicitous conduct. There is only one logical explanation for why NYRA did not go back and hold a second hearing in *Galvin* to try to legitimize its suspension against the veterinarian: NYRA knew it could not because of the injunction.

Make no mistake, the Injunction Order is clear and NYRA is in direct violation of it. However, contrary to what NYRA would have the Court believe, consideration for the spirit of the Court's order is a longstanding factor that is unquestionably part of this analysis. "The purpose for which the relief was granted is also relevant to 'deciding whether an injunction has been violated,' as the 'spirit of the injunction' may have been violated 'even though its strict letter may not have been disregarded.'" *Medina v. Buther*, 2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019) (quoting *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942). This is not confined to an isolated "case from 1942." *See id*; *see also Titra California, Inc. v. Titra Film*, 2001 WL 1382587, at *5 (S.D.N.Y. Nov. 6, 2001) ("it is the spirit of the order, not the letter, that must be obeyed"); *National Res. Bur. v. Kucker*, 481 F.Supp. 612, 615 (S.D.N.Y. 1979) (party may not avoid compliance through "hypertechnical" reading of a court order); *Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc.*, 2020 WL 1900502, at *6 (S.D.N.Y. April 17, 2020)

(contempt cannot be "avoided by some literal or hypertechnical reading of an order"); *Drywall Tapers and Pointers of Greater New York v. Local 503 of the Operative Plasters' and Cement Masons' Int'l Ass'n*, 2002 WL 31641597, at *8 (E.D.N.Y. Nov. 19, 2002) ("Elaboration on the specifics of an order is not required to forbid all the tortured interpretations defendants might devise to evade it"). At a bare minimum, NYRA's actions run contrary to the spirit of the Injunction Order.

Neither the direct language of the Injunction Order nor its spirit and intent invited NYRA to try again with a newly created set of "rules and procedures" designed to relitigate the exact same facts and circumstances. Rather, the Court found that NYRA unlawfully deprived Baffert of his constitutional right to due process by suspending him for 58 days. The Injunction Order not only dissolved NYRA's prior suspension, but exists to preserve the status quo pending the final resolution of this case and all of Baffert's claims—including Baffert's claim that NYRA has no legal authority to suspend him *at all*.[1]

Finally, and astonishingly, NYRA suggests that because it claims to interpret the Injunction Order differently, that in and of itself is evidence that the injunction did not clearly and unambiguously foreclose its latest conduct. (ECF 37 at 12). Further hedging, NYRA pleads that "[t]o the extent there is any ambiguity in the Order as to whether NYRA could proceed … this ambiguity should be resolved in NYRA's favor." (*Id.* at 13). But as the Southern District of New York held, "the alleged ambiguity of an order is no excuse. If an order is ambiguous … then a clarification should be sought *before* acts are performed in the ambiguous area." *Kucker*, 481

---

[1] NYRA glosses over the fact that Baffert has alleged NYRA has no legal authority to suspend him. That issue has yet to be finally decided. Until it is, NYRA cannot proceed in a manner that not only ignores the Court's Injunction Order, but also important legal issues concerning its authority to act.

4

F.Supp. at 615 (emphasis added). The same is true here—if NYRA wants to feign ambiguity to excuse its actions, then it should have sought clarification from the Court prior to violating the Injunction Order.

The fact of the matter is that there is nothing ambiguous about the Court's Order at all. The suspension which NYRA sought to impose on May 17, 2021 was enjoined. The fact that NYRA changed the date on its letterhead from May 17, 2021 to September 10, 2021 does not make its latest suspension effort "new." It's the very same suspension for the very same reasons – facts that NYRA cannot and does not dispute. If an action is enjoined on May 17, it remains enjoined on September 10. NYRA cannot be allowed to circumvent the Court's Order by stating that the date on the calendar has changed.

**II. NYRA's New Rules, Procedures and Charges are Inconsistent with Due Process.**

Even if the Court determines that NYRA's September 10, 2021 attempt to reignite the same suspension is not contrary to the Injunction Order, NYRA should nonetheless be ordered to stay all suspension proceedings because they are inconsistent with due process of law. NYRA's *ex post facto* rules and procedures do not come close to satisfying deeply rooted constitutional principles concerning due process.

"Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive "fair notice" of both "the conduct that will subject him to punishment," and the "severity of the penalty" that may be imposed. *BMW of N. Am. v. Gore*, 517 U.S. 559, 574 (1996); *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 433 (2001). In other words,

Baffert must have prior notice of (1) the conduct NYRA seeks to regulate; and (2) the penalties NYRA believes it can impose for such conduct.[2]

NYRA has failed to meet either of these requirements. First, NYRA provided Baffert with no prior notice that conduct which took place in other jurisdictions, and which was thoroughly investigated and decided – resulting in no suspension of Baffert - could nevertheless cause him to be suspended in New York. The "rules" which NYRA now seeks to impose on Baffert did not exist until three weeks ago. The fact that these new "rules" say that NYRA can impose punishment on a trainer for "conduct in any jurisdiction" is of no import because the rules were created after the fact. There is no way that Baffert could have possibly known that his conduct in other jurisdictions – which did not result in a suspension anywhere else – could somehow result in NYRA re-litigating those matters and imposing its own suspension. The application of *ex post facto* rules is a fundamental violation of due process.

Conceding it is seeking retroactive application of entirely new rules to conduct that occurred several months ago, NYRA posits that Baffert was nevertheless on notice of its "standards and interests that have long been recognized at common law." (ECF 37 at 18). NYRA's argument is misplaced and overlooks the unprecedented nature of its actions. NYRA has never before attempted to suspend a New York Gaming Commission (the "Gaming Commission") licensee for conduct that did not occur in New York or at a NYRA track. Each and every case NYRA invokes to support its alleged right to use its "business judgment" or act "in the best interest of racing generally," concerned activity that occurred in New York and related to New York

---

[2] NYRA begins by conceding that fair warning is a critical component of due process. However, it contends that Baffert is only entitled to the first prong of the analysis - prior notice of prohibited conduct. (ECF 37 at 17). NYRA denies that Baffert is entitled to know what penalties he may face for the prohibited conduct. NYRA's contention is simply wrong and flies in the face of Supreme Court precedent.

racing. In this matter, the entire basis for NYRA's suspension efforts against Baffert concerns: (1) decisions in other states that are now res judicata; and (2) a pending investigation in Kentucky that has only just begun. There is no way Baffert could have reasonably foreseen that NYRA could effectively revoke his New York license for matters *already decided in his favor in other jurisdictions*. It likewise strains credulity to suggest that NYRA is not only free to usurp the authority of the Gaming Commission, but may also extend its jurisdiction extraterritorially to prejudge Baffert for conduct that has yet to be adjudicated in Kentucky. There is no point to horse racing having a complex regulatory scheme in each state which sets forth clearly defined rules and penalties, if all of it can be thrown to the wind and bypassed by NYRA deciding, on a whim, who it likes and who it doesn't.

Second, due process demands that Baffert must also receive notice of the *penalty* he may face. Nowhere does NYRA so much as even provide Baffert with a *range* of penalties, much less the one it seeks to impose. The fact that NYRA suggests it can implement an indefinite, open-ended suspension, exponentially longer than the maximum penalty allowed for under state racing law is even more alarming.

NYRA equally fails to offer any defense to the fact that the charges themselves are amorphous, undefined, and standardless. Even assuming *arguendo* that the underlying conduct reflected in NYRA's charges was foreseeable to Baffert (and it was not), NYRA does not provide any criteria or framework for evaluating whether or not Baffert may be found in violation of its newly created "rules." There are no definitions or even guidelines for what the terms "detrimental to the best interest of racing," "detrimental to the health and safety of horses," and "detrimental to NYRA business operations" mean. As a result, NYRA is at liberty to impose its own subjective beliefs on whoever it chooses in any way that it chooses. NYRA concedes as much by claiming

7

it can exercise its own "discretionary business judgment" in reaching a decision. (ECF at 18 n.7). However, when "rules" are standardless, such that they create a risk of "seriously discriminant enforcement," they do not comply with due process. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

Baffert has already defeated NYRA in court when it sought to unilaterally and unlawfully suspend him. It now seeks to do the very same thing all over again with vague and highly subjective charges. The idea that he will receive, through the retroactive application of newly created rules and procedures, a fair adjudication from a body intent on punishing him, is laughable. This Court already reprimanded NYRA for imposing a "fait accompli" suspension on Baffert the first time. (ECF 26, p. 19). Now NYRA seeks to do the exact same thing again.

NYRA's punitive motive against Baffert is best represented by its inconsistent approach to other trainers accused of far more severe racing violations for conduct that actually occurred in New York and at NYRA-operated racetracks. As Baffert noted in his Motion, NYRA has aggressively pursued Baffert to the point of exceeding any reasonable bound of its own authority, while it continues to welcome with open arms other trainers who have actually been found guilty of violating New York's racing laws. The most recent example of this is Linda Rice, who has *already* been suspended by the Gaming Commission for *three years* for conduct which was *adjudicated* to be "improper and corrupt…and detrimental to the best interests of racing." (ECF 22, p.). Despite this fact, NYRA has taken no action against Rice and continues to allow her to race. NYRA's excuse for its duplicitous conduct is shockingly obtuse. Defending its decision not to pursue similar charges against Rice, NYRA states that because Rice has been suspended by the Gaming Commission, "[i]t would make no sense for NYRA to implement a process … to assess whether Rice should be excluded from the Racetracks when the Gaming Commission's

determination already prohibits her from racing." (ECF at 14).  What NYRA fails to mention, however, is that Rice *is currently racing at NYRA tracks* because she obtained an injunction against the Gaming Commission allowing her to do so.  However, the current injunction is only against the Gaming Commission and nothing is stopping NYRA from instituting its own proceedings against Rice to bar her from NYRA tracks under its alleged "common law rights."  Of course, as it has done with all other trainers besides Baffert, NYRA has refused to act.  It is impossible to reconcile NYRA's disparate treatment between these two cases as anything other than an obvious ulterior motive to target Baffert.

Finally, NYRA's new "procedures" are an affront to due process.  While NYRA goes to great length to describe the nature of the hearing and the evidence that may be presented, it neglects to mention the one sided nature of the proceedings.  First, NYRA hand picks the hearing officer.  Second, the hearing officer makes a recommendation to a "Panel," which NYRA similarly handpicks.  The Panel is then free to disregard any of the evidence presented at the hearing, or any of the hearing officer's findings, and impose its own ruling.  Finally, the procedures state that Baffert has no right to appeal.[3]  Critically, NYRA violates its own procedures by failing to notify Baffert of the penalty he may face if found in violation of the charges.  All NYRA states is that it intends to "exclude [Baffert] from entering or stabling horses on the grounds it operates" –without even a hint of how long NYRA seeks to impose such a ban. (ECF 37 at 20).  NYRA's statement

---

[3] NYRA interestingly now suggests that Baffert could "seek judicial review of the Final Decision and any challenges to the process pursuant to Article 78 of the New York Civil Procedure Law and Rules." (ECF 37 at 20). Article 78 is a process for aggrieved citizens to challenge the validity of administrative decisions, yet NYRA adamantly states that it is "not an administrative agency" and, in its previous briefing, vigorously denied that it was subject to New York administrative law or procedures. (*Id.* at 15).  NYRA cannot have it both ways.

that it will determine the length of any suspension "following the conclusion of the hearing" again indicates that it will simply make up penalties *ad hoc*.

NYRA argues that Baffert's challenges to the hearing procedures are "irrelevant" to the present motion because those procedures may be challenged "in the proceedings before the Hearing Officer." (ECF 37 at 17-18). But, apart from the fact that the hearing falls squarely within the scope of what the Court already enjoined, NYRA's argument improperly *assumes* that its made-up-on-the-fly hearing is a fair forum that meets minimal due process standards—which is the very question at issue. The Court should reject NYRA's circular logic that its unfair hearing is where Baffert must go to challenge the hearing's adequacy.

NYRA is equally incorrect to argue that "notice of procedures [for the hearing] is not an element of due process." (*Id*. at 17). The only support for this argument is the observation in *Galvin* that due process procedures can be "flexible." (*Id*. (citing *Galvin*, 70 F. Supp. 2d at 174).) But for whatever flexibility there may be establishing the particulars of a hearing procedure, the "whole point of due process is that the facts must be determined according to certain procedures that ***have been agreed upon in advance***" and that are "divorced from the exigencies of any particular case." *Arias v. Aviles*, No. 15-CV-9249. 2016 WL 3906738, at *7 (S.D.N.Y. July 14, 2016) (citation omitted; emphasis added). A state actor "cannot merely flit serendipitously from case to case, like a bee buzzing from flower to flower, making up the rules as it goes along." *Henry v. I.N.S.*, 74 F.3d 1, 6 (1st Cir. 1996). NYRA's newly-minted rules, seemingly designed to ensure the outcome NYRA has desired since May, flout these basic principles.

### III. NYRA Should Be Sanctioned.

Finally, NYRA argues that it should be excused from the consequences of its overt attempt to circumvent the Injunction Order. However, civil contempt sanctions are necessary to "coerce

10

future compliance and to remedy past compliance." *EEOC v. Local 638*, 753 F.2d 1172 (2d Cir. 1985). NYRA is a sophisticated entity with a long history of litigation. It is painfully obvious that its failure to abide by the Injunction Order is no accident. Sanctions and fees are necessary in this case to make it clear to NYRA that the Court will not tolerate its actions.

NYRA's belief that Baffert has not been harmed by its actions is completely without merit. (*See* ECF 37 at 21). Baffert has once again been forced to take legal action to prevent NYRA from threatening his livelihood by depriving him of his defined property interest. Baffert has already demonstrated that NYRA's prior actions posed significant risks to Baffert's business relationships and his entire business model. NYRA's failure to comply with the Injunction Order and its open disregard for the Court's prior warnings concerning its efforts to impose an indefinite suspension only further jeopardize Baffert's business relationships, which have already been strained by NYRA's actions.

Sanctions are effective mechanism for coercing compliance because it "forces the contemnor to conform his conduct to the court's order." *Great Lakes Educ. Loan Servs., Inc. v. Leary*, 629 B.R. 360, 371 (Bkrcy. S.D.N.Y. 2021) (quoting *CBS Broadcasting, Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016)). In equal measure, attorneys' fees and costs are appropriate where "the contemnor had actual notice of the Court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Cheri Amie, Inc. v. Windstar Apparel, Corp.*, 175 F.Supp.2d 562, 567 (S.D.N.Y. 2001). The plain implication of the Injunction Order is obvious: the new status quo must be maintained until after the final resolution of this case. There is no excuse for NYRA's failure to grasp this concept. NYRA should be sanctioned and Baffert should be awarded his reasonable fees and costs for pursuing this Motion and enforcing the Court's Order.

11

**CONCLUSION**

For the foregoing reasons, this Court should hold NYRA in contempt for attempting to circumvent the Injunction Order and award Baffert his fees and costs. Additionally, the Court should stay NYRA from proceeding with its renewed efforts to suspend Baffert for the previously enjoined charges pending the conclusion of this case.

| | |
|---|---|
| Dated: October 1, 2021 | Respectfully submitted, |

Charles Michael
cmichael@steptoe.com
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

BY: */S/ W. CRAIG ROBERTSON, III*
W. Craig Robertson III
wrobertson@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky 40507-1746
859.233.2012

Clark O. Brewster
Brewster & DeAngelis
2617 E. 21st
Tulsa, Oklahoma 74114
cbrewster@brewsterlaw.com
*(Pro hac filed and pending)*

*Counsel for Plaintiff Bob Baffert*

100593590.2