**WYATT** | WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507
859.233.2012
wyattfirm.com

W. Craig Robertson III
859.288.7667
wrobertson@wyattfirm.com

October 21, 2021

Honorable Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    Bob Baffert v. The New York Racing Association, Inc.
             Case No. 1:21-cv-03329 (E.D.N.Y.)

Dear Judge Amon:

On behalf of the Plaintiff, Bob Baffert ("Baffert"), I am writing pursuant to Section 3(A) of the Court's Motion Practices and Rules to advise of Baffert's intention to file a Motion for Leave to File an Amended Complaint against the Defendant, The New York Racing Association, Inc. ("NYRA"). This Amended Complaint will address the new "rules and procedures" which NYRA enacted subsequent to the Court's Injunction Order and which NYRA is now attempting to use in its renewed efforts to suspend Baffert. During oral argument on my Motion to Hold NYRA in Contempt, your Honor stated that any allegations related to the new rules and procedures were not currently part of the ongoing action and would be need to be asserted as new claims. Thus, I am seeking leave to amend the current Complaint to bring those allegations into the current action. As a result, I am hereby requesting a pre-motion conference.

### Background

On May 17, 2021, NYRA sent Baffert a letter stating that he was immediately and indefinitely suspended from entering horses in racetracks that NYRA operates, including Belmont Park, Saratoga Race Course, and Aqueduct Racetrack. NYRA offered three reasons for Baffert's suspension: (1) a decision made by Churchill Downs to suspend Baffert; (2) four alleged historical testing violations of Baffert trained horses in 2020 and 2021; and (3) Baffert's statements following the 2021 Kentucky Derby.

On June 14, 2021, Baffert brought this action pursuant to 42 U.S.C. § 1983 and New York State law alleging that: (1) NYRA lacked the legal authority to suspend him as that was tantamount to a suspension of his trainer's license – which could only be done by the New York Gaming Commission; (2) NYRA deprived Baffert of his right to due process guaranteed by the Fourteenth Amendment; and (3) NYRA's conduct unlawfully interfered with his client relationships. The same day, Baffert filed a Motion for a Temporary Injunction asking the Court to enjoin NYRA from enforcing its suspension pending the resolution of Baffert's claims in his Complaint.

On July 14, 2021, this Court entered an Order enjoining NYRA from enforcing its suspension. The Court directed that NYRA was enjoined "pending the final hearing and determination of this action." NYRA did not appeal the Court's ruling. Since the injunction, Baffert raced thoroughbreds at Saratoga Race Course multiple times—and even won the prestigious Grade I Ballerina Stakes—without incident.



Despite these facts, on September 10, 2021, NYRA sent Baffert another letter stating that it was instituting renewed proceedings to suspend him. The reasons set forth in NYRA's September 10 letter for why it wants to suspend Baffert are the exact same ones set forth in its May 17 letter. The only thing different is that NYRA has now created rules and procedures, after the fact, and is attempting to apply them to Baffert. These "rules and procedures" did not exist until NYRA created them out of whole cloth two months after the Court refused to allow it to arbitrarily suspend Baffert, and at least *four months* after the conduct in question occurred. In other words, there are both substantive and procedural issues related to NYRA's creation of these rules and its attempt to apply them *ex post facto*.

## Argument

The rules and procedures which NYRA has concocted for Baffert were all created after the fact. None of the "rules" which NYRA now seeks to enforce were in place at the time that Baffert engaged in the conduct which NYRA contends is improper. Fair warning is a hallmark of due process. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). NYRA is a state actor. (ECF 26 at 17). Baffert has a right to know—ahead of time—what conduct may cause him to face penalties from NYRA, particularly with respect to conduct *unrelated to New York racing rules and regulations* occurring *in other jurisdictions,* and particularly when NYRA's threatened punishment is exponentially more severe than any punishment Baffert could receive from any other regulatory body. What NYRA cannot do is create rules after the fact and apply them to Baffert.

Second, based on NYRA's latest letter, the "charges" against Baffert are unquestionably vague, entirely subjective and non-falsifiable. There are no articulable standards for establishing whether Baffert's conduct in other jurisdictions was "detrimental to the best interests of racing," "detrimental to the health and safety of horses and jockeys," or "detrimental to NYRA business operations." A charge fails to comply with due process if it "is so standardless that it authorizes or encourages seriously discriminant enforcement.'" *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Under the framework that NYRA has imposed, there is no way Baffert could possibly know how to behave so as to evade the scope of NYRA's apparently limitless ability to ignore res judicata in other jurisdictions and institute its own arbitrary punishment.

Ultimately, "the point of due process—of the law in general—is to allow citizens to order their behavior." *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 59 (1991) (O'Connor, J., dissenting); *see also State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 417-18 (2003). There is no way Baffert could have ever foreseen that NYRA, and not the New York Gaming Commission (the "Gaming Commission"), could indefinitely suspend him from all New York racing based on adjudicated matters and unsubstantiated *allegations* pending in another jurisdiction. Further, NYRA crafted its rules, substantive charges and hearing procedures months after the events in question, and only *after* the Court ruled that it had already violated Baffert's constitutional rights. It is obvious that these rules, procedures and charges are only applicable to Baffert and did not exist until *after* the conduct they purport to regulate occurred. In other words, NYRA is blatantly attempting to invoke *ex post facto* proceedings to govern conduct that Baffert could not have remotely foreseen would expose him to penalties disproportionate to the *maximum* penalty he could receive from the Gaming Commission for a similar violation.

Finally, and relatedly, NYRA fails to follow its own procedures. Its newly created rules make clear that the notice of hearing is required to include the "proposed penalty being sought." Nothing in its letter and notice to Baffert makes any reference to the length of the suspension NYRA seeks to impose. The Court has already found this to be problematic. (*See* ECF 26 at 24-25 ("And although NYRA characterizes the suspension as 'temporary,' a better description of it would be 'indefinite'"). This is the exact same thing NYRA seeks to do again – impose an indefinite suspension.

All of these deficiencies in NYRA's newly implemented rules and procedures implicate due process concerns. Baffert cannot reasonably expect a fair proceeding when NYRA has created rules after the fact, controls the outcome of the hearing, and refuses to tell him what punishment he may face. Due process plainly requires "notice and an opportunity to be heard at a *meaningful time* and in a *meaningful manner*." *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F.Supp.2d 527, 549 (S.D.N.Y. 2001) (emphasis added) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-34 (1976)). None of those basic components have been met here, which is the entire reason Baffert brought this action against NYRA in the first place. Baffert now seeks to bring NYRA's latest conduct before the Court by way of Amended Complaint.

Lastly, I note that under Fed. R. Civ. P. 15, leave to amend is freely given and there would be no prejudice to NYRA in adding this claim as the parties have yet to begin discovery.

Sincerely,

W. Craig Robertson III

WCR/sr
cc: All Counsel of Record
(VIA ECF)

100603023.1