UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

BOB BAFFERT,

                Plaintiff,

    -against-

THE NEW YORK RACING ASSOCIATION,
INC.,

                Defendant.
-------------------------------------------------------------x

    NOT FOR PUBLICATION
    **MEMORANDUM & ORDER**
    21-CV-3329 (CBA)

**AMON, United States District Judge:**

On July 14, 2021, I granted a preliminary injunction preventing Defendant New York

Racing Association, Inc. ("NYRA") from enforcing its May 17, 2021 decision suspending Plaintiff

Bob Baffert ("Baffert") from entering races or occupying stall space at Belmont Park, Saratoga

Race Course, and Aqueduct Racetrack. Baffert now moves for attorneys' fees and costs relating

to litigation of his preliminary injunction motion. For the reasons set forth below, the Court awards

Baffert $106,457.50 in fees and $2667.31 in costs.

## DISCUSSION

### I.    Timeliness of Motion

NYRA argues that Baffert's motion is premature at the preliminary injunction stage. 42

U.S.C. § 1988(b) states that "[i]n any action or proceeding to enforce a provision of [42 U.S.C.

§ 1983] . . . , the court, in its discretion, may allow the prevailing party, other than the United

States, a reasonable attorney's fee as part of the costs." NYRA's argument appears to be that

Baffert's victory on his preliminary injunction does not make him a "prevailing party" under

§ 1988(b) because he has received only interim relief.

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the

legal relationship between the parties by modifying the defendant's behavior in a way that directly

benefits the plaintiff." Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist.
Comm'n, 934 F.3d 238, 243 (2d Cir. 2019) (quoting Farrar v. Hobby, 506 U.S. 103, 111-12
(1992)). Accordingly, "[w]hen a party receives a stay or preliminary injunction but never obtains
a final judgment, attorney's fees are proper if the court's action in granting the preliminary
injunction is governed by its assessment of the merits." Haley v. Pataki, 106 F.3d 478, 483 (2d
Cir. 1997). Determining whether the grant of a preliminary injunction was governed by an
assessment of the merits "requires close analysis of the decisional circumstances and reasoning
underlying the grant of preliminary relief." Mastrio v. Sebelius, 768 F.3d 116, 120 (2d Cir. 2014)
(quoting Haley, 106 F.3d at 483).

NYRA cites Sole v. Wyner, 551 U.S. 74 (2007), in support of the proposition that an award
of attorneys' fees is inappropriate at the preliminary injunction stage. In Sole, the plaintiff sought
to hold a nude protest, in violation of a law requiring bathing suits. Id. at 78. The district court
granted a preliminary injunction prohibiting enforcement of the law against the protestors, and the
scheduled protest went ahead as planned. Id. at 79-80. Plaintiff, however, continued to pursue her
demand for a permanent injunction so that she could continue to organize nude protests. Id. at 80.
At summary judgment, the district court found for the defendants and declined to grant the
permanent injunction. Id. at 81. The Supreme Court held that "[p]revailing party status . . . does
not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone
by the final decision in the same case." Id. at 83.

The Court explicitly did not hold that § 1988 attorneys' fees could never be awarded for
victory in a preliminary injunction case. Specifically, Justice Ginsburg noted that "[w]e express
no view on whether, in the absence of a final decision on the merits of a claim for permanent
injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of

counsel fees." Id. at 86. Accordingly, post-Sole Second Circuit decisions have continued to cite Haley for the rule statement that attorneys' fees are appropriate in the absence of a final decision in certain circumstances. See, e.g., Mastrio, 768 F.3d at 120; R.G. ex rel. M.G. v. Minisink Valley Cent. Sch. Dist., 531 F. App'x 76, 79 (2d Cir. 2013) (summary order).

After Sole, numerous federal appellate courts have explained that attorneys' fees are appropriate where the plaintiff gains a preliminary injunction based on the merits of its claims and "the defendant ultimately avoided final resolution of the merits . . . by enacting new [rules] giving . . . virtually all of the relief sought in the complaint." People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 233 (3d Cir. 2008); see, e.g., Rogers Grp., Inc. v. City of Fayetteville, 683 F.3d 903, 911 (8th Cir. 2012); Kan. Judicial Watch v. Stout, 653 F.3d 1230, 1238 (10th Cir. 2011) ("[T]he plaintiff qualifies as a 'prevailing party' even if events outside the control of the plaintiff moot the case. If, however, the preliminary injunction is undone by a subsequent adverse decision on the merits, the plaintiff's transient success in obtaining the injunction does not render the plaintiff a 'prevailing party.'"); Common Cause/Ga. v. Billups, 554 F.3d 1340, 1356 (11th Cir. 2009) (holding that Sole's rule was "inapplicable" where Georgia "repealed the enjoined statute"); Dearmore v. City of Garland, 519 F.3d 517, 523-24 (5th Cir. 2008) (holding that plaintiff was a prevailing party where "[i]n response to the district court's grant of th[e] preliminary injunction, the City amended the offending provision of the Ordinance, thereby mooting the case"). Post-Sole Second Circuit district courts have followed suit. See, e.g., HomeAway.com, Inc. v. City of New York, 523 F. Supp. 3d 573, 584 (S.D.N.Y. 2021) ("[A] party prevails under § 1988 where it obtains a preliminary injunction against enforcement of a law that is later amended or repealed."); Estiverne v. Esernio-Jenssen, 908 F. Supp. 2d 305, 309-10 (E.D.N.Y. 2012).

Baffert is a prevailing party under this framework. First, the preliminary injunction was decided on the merits of Baffert's claims. Over ten pages of the twenty-seven-page preliminary injunction opinion were dedicated to finding that "Baffert has established a likelihood of proving that NYRA's suspension constituted state action, and that the process by which it suspended him violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution." (ECF Docket Entry ("D.E.") # 26 at 25; see id. at 15-25.) Accordingly, the preliminary injunction was "governed by [an] assessment of the merits" as required by Haley. 106 F.3d at 483.

Second, the preliminary injunction was against a state actor that later changed its procedures, mooting the question. Rather than appeal the preliminary injunction, NYRA changed its suspension procedures such that trainers can no longer be suspended without a pre-suspension hearing. (See D.E. # 35-4.) Accordingly, "[Baffert's] claim to have won durable relief here is especially convincing . . . because the amended [procedures] eliminate[] the very features that caused [the suspension] to be found likely unconstitutional." HomeAway.com, 523 F. Supp. 3d at 585. Therefore, because Baffert "neutralized and then caused to be superseded a [state action he] persuasively argued was unconstitutional" and because "the preliminary injunction [he] secured was never 'reversed, dissolved, or otherwise undone,'" Baffert has, "unavoidably, prevailed." Id. (quoting Sole, 551 U.S. at 83).

At oral argument, Baffert also agreed not to seek damages on his § 1983 claim related to the May 2021 suspension should I grant him attorneys' fees. (Oral Argument Tr. 10:18-20.) With this concession, the portion of this case related to the subject matter of the preliminary injunction is complete. That there will be no additional litigation on this topic belies NYRA's worry that there will be serial attorneys' fee litigation regarding the subject matter of the preliminary

4

injunction. Accordingly, I find that attorneys' fees on the preliminary injunction are appropriate at this time.

## II.   Special Circumstances

NYRA next argues that, even if Baffert is a prevailing party under § 1988, attorneys' fees should not be awarded because of "special circumstances." "[S]uccessful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust." Raishevich v. Foster, 247 F.3d 337, 344 (2d Cir. 2001). The Second Circuit "established a two-step test for courts to apply when considering whether special circumstances make it appropriate to deny attorneys' fees." Id. First, courts must consider "whether 'the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained'"—in other word, courts "must determine whether 'attorneys who generally take such cases on a contingent basis would readily appreciate the value of the case and agree to pursue it.'" Id. (quoting Kerr v. Quinn, 692 F.2d 875, 877-78 (2d Cir. 1982)). The Second Circuit explained in Kerr and Raishevich that this first step is motivated by the "function of an award of attorney's fees," which is "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." Id. (quoting Kerr, 692 F.2d at 877). If the case passes that first step, then the court "may use its discretion to deny fees if, 'in light of all of the circumstances and the size of recovery, an award of such fees might work an injustice.'" Id. (quoting Kerr, 692 F.2d at 878). Factors to consider include "the award of punitive damages, the amount of the compensatory award, the degree and measurability of the harm to the plaintiff, and the public interest in the particular claim." Id.

5

The parties contest whether this case meets the first step of the <u>Kerr-Raishevich</u> test. Because I find that a fee award would not be unjust, however, I need not resolve that dispute. NYRA offers two reasons why an award would be unjust.  First, it argues that an attorneys' fee award would be unjust because NYRA's suspension itself was aimed at just ends.  (D.E. # 36 at 8 ("NYRA's suspension of Plaintiff was implemented to protect the most important interests New York State has in connection with horse racing; that is, the integrity of the sport and the public's confidence in its legitimacy.").)  Following this logic would deny civil rights plaintiffs attorneys' fees in a majority of § 1983 cases.  Section 1983 claims are necessarily brought against state actors, and a state actor will undoubtedly argue that the ends of its policies are in the public's interest. And where the state actor has lost on the merits of the § 1983 claim—in other words, where the court has ruled that the means of its policies were unjust—it would denigrate a plaintiff's constitutional rights to disallow attorneys' fees so that the ends can justify the means.  This understanding would also undermine the Second Circuit's declaration that prevailing civil rights plaintiffs should "ordinarily recover attorneys' fees."  <u>Raishevich</u>, 247 F.3d at 344.  Second, NYRA argues that attorneys' fees will be a windfall because Baffert could also recover damages that will cover his costs.  Baffert has agreed not to seek damages after receiving an attorneys' fee award, (Oral Argument Tr. 10:18-20), so no windfall will occur.

In summary, NYRA has not identified special circumstances per the <u>Kerr-Raishevich</u> test. As a result, Baffert is entitled to reasonable attorneys' fees and costs as a prevailing party under § 1988.

## III.   Reasonableness of Requested Costs and Fees

Baffert requests a total of $162,086.31 in fees and expenses for the six attorneys and two paralegals who performed work on his case.  Baffert requests $88,052.46 in fees and expenses

related to Wyatt, Tarrant & Combs, LLP ("Wyatt") partner W. Craig Robertson III, associates Thomas E. Travis and Lexy Gross, and paralegal Sarah K. Vandegrift's work; $54,034.50 related to Steptoe & Johnson LLP ("Steptoe") partner Charles Michael and paralegal Kimberly Gulino's work; and $19,999.35 related to Brewster & DeAngelis partner Clark O. Brewster and associate Mbilike M. Mwafulirwa's work.

"In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case— [which] creates a presumptively reasonable fee.'" Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014) (quoting Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)). "The district court then has discretion to reduce the lodestar to reflect the degree of success achieved at trial." Id.

### A. Reasonable Rates

The reasonable hourly rate is the "rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2007). Under the "forum rule," courts determining the rate a client would be willing to pay "should use the 'prevailing [hourly rate] in the community' in calculating the lodestar." Id. (alteration in original) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). "[T]he 'community' for purposes of this calculation is the district where the district court sits." Id. In determining the prevailing rate in the district, "courts may consider the rates awarded in prior cases, their own knowledge of hourly rates charged in the district, [the] evidence submitted by the parties," and "the 'nature of [the] representation and type of work involved in a case.'" Saldana v. New Start Grp., Inc., No. 14-cv-4049 (CBA) (RLM), 2016 WL 3683530, at *2 (E.D.N.Y. July 6, 2016) (quoting Arbor Hill, 522 F.3d at 184 n.2).

7

The Second Circuit "has instructed that determination of a reasonable hourly rate" is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 59 (2d Cir. 2012) (quoting Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005)). "[D]etermination of the prevailing market rate in the relevant community also requires an evaluation of evidence proffered by the parties." Farbotko, 433 F.3d at 209.  Accordingly, "the fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 895 n.11).  In this case, Baffert has supplied only his attorneys' affidavits, not any additional evidence.  Where there is an "absence of any credible evidence by the fee applicant of a higher prevailing market rate," id. at 10, the court can still award attorneys' fees, but must rely on its own understanding of prevailing rates, supplemented by judicial notice of prior cases, see id.

The parties dispute the reasonable range for attorneys litigating § 1983 claims in the Eastern District of New York.  Citing a district court case from earlier this year, NYRA argues that reasonable rates in this district are "$300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." (D.E. # 36 at 9 (quoting Avedana v. Casa Ofelia's Bakery LLC, No. 20-cv-2214 (DG) (AKT), 2021 WL 4255361, at *18 (E.D.N.Y. Aug. 19, 2021), report and recommendation adopted, 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021)).)  Baffert responds that Avedana cited the prevailing rates in the district from 2011. (D.E. # 41 at 8); see Avedana, 2021 WL 4255361, at *14 (analyzing Konits v. Karahalis, 409 F. App'x 418 (2d Cir. 2011) (summary order) to determine the appropriate range).

8

Although I recognize that recent Eastern District cases have cited the $300-$450 rate for partners and the accompanying ranges for less experienced lawyers, I am not strictly bound by other courts determinations of the reasonable hourly rate. See Farbotko, 433 F.3d at 208 ("[A] reasonable hourly rate is not itself a matter of binding precedent.") Konits and other § 1983 cases substantiate Baffert's claim that courts have cited the $300-$450 range since at least 2011.  In Konits, the Second Circuit affirmed a 2010 district court decision that set an approximately $300-$400 rate. See Konits v. Valley Stream Cent. High Sch. Dist., No. 01-cv-6763 (LDW), 2010 WL 2076949, at *2 (E.D.N.Y. May 19, 2010), aff'd sub nom. Konits, 409 F. App'x at 424.  That case in turn cited another 2010 Eastern District § 1983 case, Luca v. County of Nassau, 698 F. Supp. 2d 296 (E.D.N.Y. 2010), which cited a 2009 FDCPA case "awarding $450 per hour to civil rights attorney with 17 years of experience in FDCPA case." Id. at 301 (citing Rodriguez v. Pressler & Pressler, LLP, No. 06-cv-5103 (BMC) (JO), 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009)).[1]

The Second Circuit has warned that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under § 1988(b) and compensation available in the marketplace." Farbotko, 433 F.3d at 209. Where historical rates are "not reflective of rates regularly awarded today in the District," courts will adopt rates that more accurately reflect their own familiarity of prevailing rates. Serricchio v. Wachovia Sec., LLC, 706 F. Supp. 2d 237, 255 n.12 (D. Conn. 2010); see also, e.g., Espinosa v. Perez, No. 18-cv-8855 (LGS), 2020 WL 1130743, at *3 (S.D.N.Y. Mar. 9, 2020) ("Defendants' citations to cases where courts approved rates between $250 and $350 per hour for associates with less experience in 2010, 2014 and 2015 are unpersuasive where they do not explain why rates from

---

[1] Although Rodriguez is an FDCPA case, not a § 1983 case, its citation in Luca indicates that Eastern District courts have found that similar rates are reasonable in both contexts. See also Konits, 2010 WL 2076949, at *2 (citing Gutman v. Klein, No. 03-cv-1570 (BMC), 2009 WL 3296072 (E.D.N.Y. Oct. 13, 2009), a case that also did not involve a § 1983 claim and in which attorneys' fees were awarded based on spoliation of evidence).

five to ten years ago should govern here"); Pappas v. Watson Wyatt & Co., No. 04-cv-304, 2008 WL 45385, at *4 (D. Conn. Jan. 2, 2008). Here, these old, recycled rates do not match my "own familiarity with prevailing rates in this district for attorneys of similar skill, reputation and experience . . . engaged in civil rights litigation."[2] Townsend v. Benjamin Enters., Inc., No. 05-cv-9378 (GAY), 2009 WL 8758822, at *3 (S.D.N.Y. Oct. 2, 2009). Rather than rely on those rates, then, I exercise my "discretion" to "rely in part on [my] own knowledge of private firm hourly rates in the community." Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

In my experience, the prevailing rates used by Judge Engelmayer in HomeAway.com are closer to the prevailing rates of attorneys arguing civil rights cases in the Eastern District. In that case, Judge Engelmayer took into account past cases as well as the "upwards" trend in "hourly billing rates since th[o]se cases were decided" to come to the conclusion that the rates of experienced, civil rights attorneys in constitutional cases range from $350 to $650. HomeAway.com, 523 F. Supp. 3d at 597. Accordingly, unlike the rates cited by NYRA, these rates consider the passage of time. The HomeAway.com rates also accord with my familiarity with prevailing rates for similar attorneys in similar cases in the Eastern District—in my experience, the bars of the federal courts in Manhattan and in Brooklyn are largely identical.

I am aware that the Second Circuit ruled in Simmons v. New York City Transit Authority, 575 F.3d 170 (2d Cir. 2009), that attorneys' fees should be awarded based on in-district prevailing rates. Applying that rule to that particular case, the Second Circuit ruled that attorneys' fees

---

[2] Solely based on inflation, the range NYRA cited would have grown to $390–$585 per hour for partners, $260–$390 per hour for senior associates, and $130–$260 per hour for junior associates since Rodriguez. See CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last accessed Nov. 10, 2021) (calculating inflation from March 2009 to October 2021 and rounding to the nearest dollar). Even these ranges are arguably too low, given that attorney billing rates in New York City have at times grown significantly faster than inflation. See Victor Marrero, The Cost of Rules, the Rule of Costs, 37 Cardozo L. Rev. 1599, 1613 (2016).

should be reduced to "represent[] the difference between the prevailing hourly rates of the Southern District and Eastern District." Id. at 177. That ruling, however, was not based on a holding that Eastern District rates must be lower than Southern District rates, but was instead based on the lower court's factual finding that "the hourly rates of attorneys practicing in the Southern District . . . are higher than the hourly rates charged in the Eastern District." Simmons v. N.Y.C. Transit Auth., No. 02-cv-1575 (CPS) (RLM), 2008 WL 630060, at *2 (E.D.N.Y. Mar. 5, 2008), vacated, 575 F.3d 170; see Simmons, 575 F.3d at 173 ("[T]he district court recognized [that Southern District rates] 'are higher than the hourly rates charged in the Eastern District.'" (quoting Simmons, 2008 WL 630060, at *2)). Although it may have been the case in Judge Sifton's opinion thirteen years ago that Eastern District rates were then lower than Southern District rates, I conclude based upon my knowledge of the prevailing rates in Brooklyn federal court at this time that they are largely identical to those in Manhattan.[3] Accordingly, I begin my analysis of reasonable rates by looking at the ranges set out in HomeAway.com.

Determining that the rates in HomeAway.com are indicative of the prevailing rates in the Eastern District is only a first step. I must also consider case-specific factors to determine how Baffert's attorneys' rates should compare to the HomeAway.com ranges and baselines. Unlike in cases where courts have awarded rates "on the higher end of[] the range . . . for civil rights litigation," this case lacked "features . . . that made it more challenging than much civil rights litigation." HomeAway.com, 523 F. Supp. 3d at 596. The case did not involve "difficult constitutional questions . . . [applied] to a novel Ordinance" or the application of a recently decided Supreme Court case to an analogous situation. Id. According to Baffert, many of the contested constitutional issues were "frivolous," and only some issues were "substantial" or "significant."

---

[3] Moreover, the Southern District extends beyond Manhattan. It is unlikely that the prevailing rate of a lawyer in Sullivan County exceeds the rate of the average lawyer in Downtown Brooklyn.

(D.E. # 41 at 9.)  Because this case "'did not implicate exceptionally challenging questions of law or fact,' . . . 'this case is not one in which higher than ordinary rates are warranted.'"  Thor 725 8th Ave. LLC v. Goonetilleke, 675 F. App'x 31, 34 (2d Cir. 2017) (summary order) (quoting Thor 725 8th Ave. LLC v. Goonetilleke, No. 14-cv-4968 (PAE), 2015 WL 8784211, at *10 (S.D.N.Y. Dec. 15, 2015), aff'd, 675 F. App'x at 31).

Additionally, the case was high-profile and offered reputational benefits for Baffert's attorneys, especially those attorneys who market themselves as equine law experts.  (See, e.g., D.E. # 30-2 at 5 (Declaration of W. Craig Robertson III) ("I am particularly experienced in equine matters of all types.").)  Potential reputational benefits weigh in favor of a lower fee because "an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case."  Arbor Hill, 522 F.3d at 190.

On the other hand, Baffert is correct that the litigation was hotly contested and included quick turnaround of substantial briefing in a high-pressure situation.  Moreover, Baffert's attorneys handled the case well, achieving victory on the preliminary injunction with well-argued briefs.  Taken together with the previously mentioned case-specific factors, these factors counsel a reasonable rate in the middle of the range.

Finally, I consider factors related to the individual attorneys requesting fees.  At the outset, Baffert argues that I should give great weight to the rates at which the attorneys actually billed because Baffert paid those rates.  Baffert's citation to a pre-Arbor Hill Southern District case notwithstanding, "the fact that the prevailing party has negotiated, or paid its lawyers based on, a particular billing rate is not the test of the rate's reasonableness under § 1988."  HomeAway.com, 523 F. Supp. 3d at 595 (collecting cases).  "There are many reasons why a client and counsel settle

12

on a rate, including a longer-term course of dealing or a negotiated rate framework spanning all representations during a given period, which do not bear on the reasonable rate in the particular case." Id. Although "the attorney's customary hourly rate" may be a factor to be considered, it is one of many. Arbor Hill, 522 F.3d at 186 n.3. Accordingly, Baffert's decision to pay a premium to guarantee the attorneys of his choice is relevant, but it does not overwhelm the overall inquiry: what is the "minimum [rate] necessary to litigate the case effectively"? Id. at 190.

### 1. Wyatt

W. Craig Robertson III requests his standard hourly rate of $475 per hour, in the middle of the Eastern District prevailing-rate range for partners. Robertson is a partner-in-charge of his law firm, a former federal clerk, a 28-year practitioner, and an expert in equine law. Moreover, Robertson's firm has an extensive relationship with Baffert, representing him in legal matters over many years. See id. at 186 n.3 (instructing district courts to consider "the nature and length of the professional relationship with the client"). Although these factors all counsel for a high rate within the reasonable range, Robertson does not note any specific expertise in litigating due process or § 1983 cases. See HomeAway.com, 523 F. Supp. 3d at 598 (reducing experienced counsel's fee because of her "lesser experience . . . with this particular area of law and type of legal challenge"). Because Robertson requests a rate in the middle of the range, case-specific factors call for a rate in the middle of the range, and attorney-specific factors call for a mid-to-high range rate, I find that Robertson's standard hourly rate of $475 per hour is reasonable.

Thomas E. Travis requests his standard hourly rate of $255. Travis has practiced for six years (arguably still a mid-level associate, depending on the firm). In HomeAway.com, a more complicated and difficult case, the court found that rates of $375 per hour were reasonable for a similarly positioned associate. Id. Travis is also a former state court clerk. Aside from these facts,

Robertson's declaration gives no insight into Travis's experience generally or with this type of litigation. See Farbotko, 433 F.3d at 209 ("[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." (quoting Blum, 465 U.S. at 895 n.11)). As with Robertson, Travis benefits from Wyatt's longstanding relationship with Baffert. The combination of these individual factors with the case-specific factors counsels for a rate significantly lower than the rate in HomeAway.com. Given that Travis's requested rate is approximately two-thirds of the HomeAway.com rate, I find that it is reasonable.

Lexy Gross requests her standard hourly rate of $220. Gross has been practicing law for two years and is a former federal law clerk. In HomeAway.com, the court noted that "[t]ypical rates . . . for Junior Associates . . . [are] more in the range of $200 to $350 per hour depending on experience," and awarded junior associates $300 rates. 523 F. Supp. 3d at 599 (second, third, and fourth alterations in original) (quoting Torres v. City of New York, No 18-cv-3644 (LGS) (KHP), 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020)). Gross's requested rate is thus at the low-end for junior associates. An analysis of her experience mimics my analysis of Travis's — Robertson offers no details, but Gross benefits from Wyatt's longstanding relationship with Baffert. The combination of these individual factors with the case-specific factors counsels for a low-to-mid range reasonable rate for Gross. Accordingly, I find Gross's requested rate reasonable.

Sarah K. Vandegrift requests her standard hourly rate of $265. Although Vandegrift is undoubtedly highly capable as a senior paralegal with 42 years of experience who focuses on complex commercial litigation, Baffert does not offer "any evidence whatsoever as to why these rates are consistent with the [Eastern District]—or any—legal market" rate for even a senior paralegal. HomeAway.com, 523 F. Supp. 3d at 599. Even where courts have recognized the

14

"excellent" work of paralegal professionals, as I do here, they have refused to approve reasonable rates that "outstrip the rates that [the fee seeker] paid for the work of some of the associates in th[e same] case." E.g., id.

"Generally, '[r]ates for non-lawyers . . . [fall] below $200 per hour." Id. (alterations in original) (quoting Torres, 2020 WL 6561599, at *5 (collecting cases)). In HomeAway.com, the court awarded $150 per hour for highly experienced legal assistants. Id. As explained above, this case is significantly less complex than the HomeAway.com case. Clearly, Vandegrift is exceedingly experienced. Given the moderate difficulty of the case itself, I find that a $115 hourly rate is reasonable.

### 2. Steptoe

Charles Michael requests his standard hourly rate of $975, far in excess of the high end of the prevailing-rate range for partners in Eastern District civil rights litigation. Michael has nineteen years of legal experience in New York and had two federal clerkships, including one in New York. Michael does not provide evidence that he has extensive experience in litigating constitutional issues, although he does claim to have "extensive experience in cases involving regulatory investigations." (D.E. # 30-3 at 5.) In summary, although he is a senior partner at a prestigious law firm with prestigious clerkships, Michael has less experience than Robertson and does not have a longstanding relationship with Baffert. Therefore, he merits a slightly lower rate. Accordingly, I find that a rate of $450 per hour is reasonable.

Kimberly Gulino requests her standard hourly rate of $195. She has been a paralegal for three years. I do not believe a fairly inexperienced paralegal merits the same rate as Vandegrift. Based on my understanding of the market and past cases, I find that a $75 hourly rate is reasonable. See Sooroojballie v. Port Auth. of N.Y. & N.J., No. 15-cv-1230 (WFK) (PK), 2020 WL 6149665,

at *7 (E.D.N.Y. Sept. 22, 2020) (using the low-end of the prevailing-rate range for a paralegal with three years of experience), report and recommendation adopted, 2020 WL 6146880 (E.D.N.Y. Oct. 20, 2020).

### 3. Brewster & DeAngelis

Clark O. Brewster requests his standard hourly rate of $450, in the mid-to-low end of the prevailing-rate range for partners. He has forty years of experience "as a trial lawyer across the country." (D.E. # 30-4 at 5.) As with the Wyatt lawyers, Brewster claims that he has a lengthy relationship with Baffert, although he does little to explain the nature of this relationship. Because he is more experienced than Robertson but has less of a connection to Baffert, I find that his standard hourly rate of $450, lower than Robertson's rate, is reasonable.

Mbilike M. Mwafulirwa requests his standard hourly rate of $350, $50 lower than the rate given to senior associates in HomeAway.com. 523 F. Supp. 3d at 598. Mwafulirwa is an eighth-year associate, with specific experience arguing constitutional and civil rights cases. He has been highly rated by numerous publications and associations for his work in civil litigation. Indeed, he was the only one of Baffert's attorneys who provided details as to his experience in this type of case. Given the moderate level of complexity of the case, however, Mwafulirwa is entitled to a midrange rate. I find that a $350 hourly rate is reasonable.

### B. Reasonable Hours

"When reviewing requests for fees, district courts are permitted to exclude hours that are excessive, redundant, or otherwise unnecessary, as well as hours spent on the unsuccessful claims." Saldana, 2016 WL 3683530, at *3 (citing Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)). I am not, however, required to go line-by-line to exclude specific billing entries: "[T]he court has discretion to either exclude specific hours o[r] reduce the award by a reasonable amount."

16

Id.; Kirsch, 148 F.3d at 173 ("[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" (quoting N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983))).

Wyatt claims 216.6 hours worked, Steptoe claims 64.3 hours worked, and Brewster & DeAngelis claims 43.3 hours worked. NYRA argues that many of the hours billed were duplicative, caused by the overlapping of multiple attorneys and multiple firms. Specifically, NYRA points to the drafting of Baffert's reply brief in support of the preliminary injunction and the appearance of three partners at the preliminary injunction hearing as examples of duplicative billing. Baffert responds that both Wyatt and Brewster & DeAngelis had case-specific expertise in equine law, and that it was necessary to include Steptoe as local counsel.

Where work by attorneys is coterminous, courts reduce fee awards by an estimation of the duplication. See, e.g., HomeAway.com, 523 F. Supp. 3d at 591. "There is . . . 'no per se rule against the use of multiple attorneys . . . and the court is given considerable latitude in determining the reasonableness of the utilization of co-counsel.'" Saldana, 2016 WL 3683530, at *4 (quoting Macko v. Gen. Motors Corp. Fisher Body Div., No. 80-cv-716 (HGM), 1988 WL 73446, at *2 (N.D.N.Y. July 12, 1988)). Here, Wyatt billed the lion's share of the hours, and Baffert is correct that most of Steptoe's work was not duplicative of Wyatt's. It is not unreasonable for an out-of-state plaintiff to use an out-of-state law firm with which he has significant connections, and it is reasonable for local counsel to carefully review out-of-state counsel's work and to offer significant advice on local practice. However, as NYRA points to what appears to be at least some duplication in the drafting of the reply brief, I apply a 10% reduction to Wyatt's and Steptoe's hours, assuming that 20% of the firms' work was coterminous. HomeAway.com, 523 F. Supp. 3d at 591.

17

I am unable to determine whether Brewster & DeAngelis performed duplicative work because its bills are overly vague. NYRA complains about the vagueness of these bills. As an example of this vagueness, Brewster & DeAngelis's bills include seventeen entries of just "telephone conference with client," "telephone conference with co-counsel," or similar, with no explanation of the purposes of those conferences. Rarely do Brewster's descriptions exceed five words. "Courts have imposed reductions as high as 40% based solely on vague billing entries," although 33% reductions are common. Anderson v. County of Suffolk, No. 09-cv-1913 (GRB), 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (collecting cases). Here, to account for the vague billing entries, in addition to the possibility of duplication obfuscated by those vague entries, I will apply an across-the-board reduction of 33% for the hours claimed by Brewster & DeAngelis.

NYRA also argues that Robertson and Brewster improperly requested their full hourly rate for travel time. "[I]n accordance with established court custom," travel time is often compensated at half-rate. Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 139 (2d Cir. 2008). Baffert does not challenge this argument on reply. Brewster billed four hours for travel, which I will reduce to two hours. Robertson block-billed for his travel time alongside other items, making it unclear how much time was actually spent traveling. (See D.E. # 30-2 at 18 (billing thirteen hours for "prepared for injunction hearing; multiple emails and tc's with Clark Brewster regarding the same; traveled to New York" and sixteen hours for "prepared for hearing in New York; attended hearing in New York; traveled back to Lexington").) I will reduce his twenty-nine block-billed hours by 25%, accounting for vagueness and assuming that a portion of the time was spent on travel.

## C. Fee Calculation

The "product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a presumptively reasonable fee." Stanczyk, 752 F.3d at 284 (quoting Millea, 658 F.3d at 166). After the above reductions to reasonable rates and reasonable hours are taken into account, the presumptively reasonable fee for each attorney and the sum total are outlined in the following chart.

| Name | Rate | Hours | Fee |
|---|---|---|---|
| W. Craig Robertson III | $475 | 104.1[4] | $49,447.50 |
| Thomas E. Travis | $255 | 52[5] | $13,260 |
| Lexy Gross | $220 | 32.3[6] | $7106 |
| Sarah K. Vandegrift | $115 | 17.1[7] | $1966.50 |
| Charles Michael | $450 | 48.3[8] | $21,735 |
| Kimberly Gulino | $75 | 7.7[9] | $577.50 |
| Clark O. Brewster | $450 | 26.7[10] | $12,015 |
| Mbilike M. Mwafulirwa | $350 | 1[11] | $350 |
| | | **Total Fees:** | **$106,457.50** |

I find no reason to reduce the lodestar amount "to reflect the degree of success [plaintiff] achieved." Id. Baffert was wholly successful in seeking a preliminary injunction. Accordingly, Baffert is due $106,457.50 in fees.

---

[4] 122.9 reduced by 7.25 hours for travel, reduced by 10% for duplication, rounded to the tenth of an hour.
[5] 57.8 reduced by 10% for duplication, rounded to the tenth of an hour.
[6] 35.9 reduced by 10% for duplication, rounded to the tenth of an hour.
[7] 19 reduced by 10% for duplication.
[8] 53.7 reduced by 10% for duplication, rounded to the tenth of an hour.
[9] 8.6 reduced by 10% for duplication, rounded to the tenth of an hour.
[10] 41.8 reduced by 2 hours for travel, reduced by 33% for duplication and vagueness, rounded to the tenth of an hour.
[11] 1.5 reduced by 33% for duplication and vagueness.

### D. Expenses

Baffert requests $2667.31 in expenses. NYRA does not dispute the reasonableness of Baffert's documented costs. Finding them reasonable, I award them in full. In summary, I find that Baffert is due $109,124.81 in costs and fees.

## CONCLUSION

For these reasons, I find that Baffert is a prevailing party in this litigation and is entitled to an award of reasonable fees and costs under 42 U.S.C. § 1988. I award Baffert $109,124.81, comprising an award of $106,457.50 in fees and $2667.31 in costs.

SO ORDERED.

Dated: December 15, 2021
     Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge